COMMONWEALTH TRANSPORTATION CO., INC., QUEEN TAXI CAB, INC. y NORMA TAXI CAB, INC., peticionarias, *v.* JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, demandada. JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, demandante, *v.* COMMONWEALTH TRANSPORTATION CO., INC., QUEEN TAXI CAB, INC. y NORMA TAXI CAB, INC., demandadas.

*Números:* JRT-63-14    *Resueltos:* 31 de enero de 1966
JRT-63-19

*Juan Nevárez Santiago,* abogado de las peticionarias y demandadas; *J. B. Fernández Badillo, Procurador General, José Orlando Grau, Luis M. Rivera Pérez, Celia Canales de González* y *Marta Ramírez de Vega,* abogados de la Junta de Relaciones del Trabajo.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Blanco Lugo y Ramírez Bages.

SENTENCIA

San Juan, Puerto Rico, 31 de enero de 1966

Estos casos se consolidaron. En el J.R.T. 63-14 el patrono impugna una decisión y orden de la Junta de Relaciones del Trabajo CA-2724, D-331, dictada en 28 de agosto de 1963. En el caso J.R.T. 63-19 la Junta comparece solicitando que pongamos en vigor dicha decisión y orden. El patrono ha suscitado la cuestión de si los choferes eran empleados suyos o arrendatarios independientes de sus vehículos. La Junta resolvió que eran sus empleados y que existía

relación obrero-patronal entre ellos. A la luz de los hechos en el récord, y habiéndose firmado por el patrono y por una Unión una estipulación fechada 31 de mayo de 1962 para regir parte de sus relaciones de trabajo de la naturaleza y con los efectos de un convenio colectivo, sostenemos la determinación de la Junta al efecto de que existía relación obrero-patronal en este caso.

■ Las demás cuestiones suscitadas giran fundamentalmente en torno a los hechos. Hemos examinado minuciosamente la prueba en el récord. La misma no demuestra que el patrono cometiera violación alguna de la estipulación de trabajo aludida. Dicha estipulación contenía un acuerdo en cuanto a la cantidad que los choferes debían satisfacer diariamente al patrono por el uso y arrendamiento de sus vehículos, $8.50 por turnos de 12 horas, excepto los sábados y domingos en que se fijó $10.50. Todo ingreso que se obtuviere en exceso de dicha cantidad diariamente correspondía al chofer como su compensación. La estipulación o convenio, sin embargo, no determinó si esa cantidad mínima era a base de que los choferes pagaran la gasolina que se consumiera o a base de que la pagara el patrono. Los choferes entendían que debía pagarla el patrono y comenzaron un paro. El punto motivó conversaciones posteriores para acordar sobre el particular, que fueron realizadas. Hasta donde llega el récord no surge que llegaran a un acuerdo definitivo. No hay base para concluir, por lo tanto, que hubo una violación de la estipulación o convenio al negarse el patrono a pagar la gasolina utilizada por los choferes.

La Junta concluyó que el patrono había adoptado una actitud contraria a la Unión que desalentaba su creación. La prueba en el récord demuestra que el patrono en momento alguno se negó a negociar y en efecto negoció con la Unión. Como cuestión de realidad reconoció a la Unión al negociar con ella. La prueba en el récord contiene alguna que otra expresión del patrono o de algún administrador subalterno

de protesta hacia la Unión, producto más bien de una reacción personal momentánea del patrono ante ciertos hechos de violencia que acontecían, provocados por parte de los choferes. *No puede decirse sin embargo que el patrono observara un patrón de conducta fijo* y contumaz en contra de la actividad unionada. Considerando la norma de ley que nos rige y no estando la orden de la Junta a este respecto desprovista de una total ausencia de prueba, el Tribunal sostiene la misma en tanto en cuanto ordenó cesar y desistir de: "En manera alguna expresarse en forma despectiva sobre la Unión querellante o sus líderes o cualquier otra organización obrera de sus empleados o en forma otra alguna".

El Oficial Examinador concluyó y la Junta así lo aceptó, que los choferes Ferdinand Pardo, Cristóbal Robles, Arcadio Solís, Enrique Piñero, Rubén Santana, Ramón Félix Agosto, Alfonso Soto Rodríguez, José Antonio Maldonado y Ramón Molina habían sido despedidos discriminatoriamente por razón de sus actividades gremiales y ordenó que fueran empleados de nuevo con compensación por cualquier pérdida que hubieren sufrido en sus ingresos por el despido, pagándoseles una suma de dinero igual a aquella que cada uno de ellos hubiere dejado de percibir por concepto de "salarios" de haber continuado trabajando con las querelladas desde la fecha del despido hasta la fecha en que el patrono ofreciere reponerlos luego de deducirles el ingreso neto, si alguno, que durante ese período hubieren percibido por concepto de "salarios", más intereses legales sobre la pérdida menos el ingreso neto.(¹) El Oficial Examinador determinó que el chofer Marcial Zabala había observado conducta indisciplinada y no debía ser restituido al empleo. La Junta modificó la conclusión del Oficial Examinador y ordenó también la reposición de éste. Vista la prueba era procedente una conclusión como la del Oficial Examinador y así se dispone.

_____

(¹) La Junta dispuso que se suprimiera la palabra "salario" del Informe del Oficial.

■ No puede decirse por el récord que el cese de estos choferes en sus arrendamientos de vehículos del patrono, considerados por ese hecho como despedidos de sus empleos, (²) no tuviera relación alguna con sus actividades gremiales. Bajo la norma de ley que nos rige debemos por lo tanto sostener la determinación de la Junta que ordenó al patrono ofrecerles trabajo o el arrendamiento de tales vehículos si ese fuere aún el caso. Por otra parte, la prueba no disputada demuestra que durante el período aquí envuelto las actividades gremiales se llevaban a cabo en medio de un ambiente de actos de violencia a veces con la destrucción de la propiedad del patrono, y de huelgas y paros repetidos, no siempre justificables, y no siempre relacionados con la actividad gremial en sí. Obviamente no era un ambiente de paz y de orden, motivado en parte por el hecho de que muchos de los choferes repudiaban la actividad unionada o no querían agremiarse. Considerando la situación en conjunto, en las circunstancias del récord no se justificaría la sanción adicional pecuniaria impuesta al patrono. Sobre todo, en este caso en que no existía un salario fijo determinado y la compensación era lo que un chofer, según su actividad, diligencia y deseo de trabajar, produjera por encima de $8.50 o de $10.50 en cada período de 12 horas de arrendamiento del vehículo. En esas circunstancias, no siendo un caso en que claramente estuviera justificada, la sanción pecuniaria en retrospección podría resultar altamente especulativa e indebidamente onerosa.

De conformidad con lo anteriormente expuesto se modifica la Orden de la Junta en los siguientes extremos: (1) Se deja sin efecto el apartado (c) de las Recomendaciones del Oficial Examinador, cesar y desistir, no habiéndose probado violación por el patrono de los pactos de la estipulación de 31 de mayo de 1962. (2) En cuanto a la acción afirmativa, se

---

(²) El sistema de arrendar los taxis a los choferes estaba debidamente autorizado por la Comisión de Servicio Público.

elimina de la recomendación del Oficial Examinador, aceptada por la Junta, que ordena la reposición en sus empleos de los choferes Ferdinand Pardo, Cristóbal Robles, Arcadio Solís, Enrique Piñero, Rubén Santana, Ramón Félix Agosto, Alfonso Soto Rodríguez, José Antonio Maldonado y Ramón Molina, la disposición relativa a la paga retroactivamente de cantidades por concepto de la diferencia de "salarios" que hubieren dejado de percibir de haber continuado en el trabajo del patrono. (3) Se elimina de la Orden la restitución del chofer Marcial Zabala.

En todo lo que no ha sido modificada se pone en vigor la Orden de la Junta de 28 de agosto de 1962. La Junta ordenará la publicación de Avisos modificados a tenor de la modificación de la Orden.

Así lo pronunció y manda el Tribunal y firma el Sr. Juez Presidente.

(Fdo.)  LUIS NEGRÓN FERNÁNDEZ

*Juez Presidente*

Certifico:

(Fdo.)  Joaquín Berríos

*Secretario Interino*